United States District Court
Southern District of Texas
**ENTERED**
October 31, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID LEE DANIELS, III | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-199 |
| | § | |
| PENNYMAC LOAN SERVICES, LLC, *et* | § | |
| *al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a wrongful foreclosure case in which Plaintiff David Lee Daniels, III ("Daniels"), proceeding *pro se* and *in forma pauperis*, has sued 13 defendants. Pending before the Court are numerous motions filed by several different parties.

All of the defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the Court **GRANTS** the motions to dismiss filed by Defendants Government National Mortgage Association ("Ginnie Mae"); Citibank, N.A. ("Citibank"); Matthew King ("King"); Marinosci Law Group, P.C. ("MLG"); Cypresswood Lake Community Association, Inc. ("Cypresswood Lake"); and Shannon Abernathy ("Abernathy"). (Dkt. 66; Dkt. 68;[1] Dkt. 75; Dkt. 92). The other defendants' motions to dismiss (Dkt. 62; Dkt. 63; Dkt. 64; Dkt. 67; Dkt. 69) are **DENIED without prejudice** to being reasserted as motions for summary judgment.

---

[1] Docket entry 68 is an amended motion to dismiss filed by King and MLG. The first motion to dismiss filed by King and MLG (Dkt. 29) is **DENIED AS MOOT**.

## FACTUAL AND PROCEDURAL BACKGROUND

After several defendants pointed out that his original complaint was deficient and moved for a more definite statement, Daniels filed a more definite statement[2] and another pleading entitled "Notice to the Court of Timeline." (Dkt. 1; Dkt. 57; Dkt. 58). Most of the claims contained within Daniels's pleadings are difficult to follow, but it is clear that Defendant Pennymac Loan Services, LLC ("Pennymac") initiated foreclosure proceedings against Daniels's home in December of 2021 and that Daniels vigorously contests Pennymac's standing to foreclose. (Dkt. 57 at pp. 19–21; Dkt. 58 at pp. 3–4). Defendants ZLOS Investment Trust ("ZLOS") and Sam Sorour ("Sorour") bought Daniels's house at the foreclosure sale on January 4, 2022. (Dkt. 58 at p. 4). Daniels also claims that Cypresswood Lake, of which Abernathy is the registered agent and manager, sued him in Texas state court to collect homeowner association ("HOA") assessments that he did not owe. (Dkt. 57 at pp. 32–34).[3]

The foreclosure and HOA-lawsuit claims are arguably severable from each other. However, no party has requested severance under Federal Rule of Civil Procedure 21, and at this time the Court will keep the claims together under this cause number in the interest of judicial economy. The following facts are either undisputed or set forth in Daniels's

---

[2] The defendants' motions for a more definite statement (Dkt. 35; Dkt. 36; Dkt. 37; Dkt. 41) remain pending and are **DENIED AS MOOT**.

[3] Daniels filed a global response to the defendants' motions to dismiss that was docketed as a motion to "dismiss" the defendants' motions. The Court will consider the response (Dkt. 73); but to the extent that Daniels intended it to be a motion to strike the defendants' motions to dismiss, the motion to strike is **DENIED**.

pleadings and taken as true for the purposes of the Court's ruling on the defendants' motions to dismiss.

*—The foreclosure*

In his filings, Daniels alleges that he and his ex-wife[4] took out a mortgage loan with Defendant SWBC Mortgage Corporation ("SWBC") in August of 2016. (Dkt. 58 at p. 1). Daniels made his payments for two years, but his monthly payment for August of 2018 was "declined/unaccepted." (Dkt. 58 at p. 1). Daniels contacted SWBC the day that his payment request was declined, and SWBC told him that his loan account "d[id] not exist in SWBC Mortgage Corporation's system." (Dkt. 58 at pp. 1–2). In November of 2018, SWBC reported to Experian, a credit reporting agency, that Daniels's loan account had been "closed" and "transferred to another office." (Dkt. 58 at p. 2). On November 7, 2018, SWBC had transferred servicing responsibility for Daniels's loan to Pennymac; but Daniels claims in his pleadings that he was not notified of the transfer. (Dkt. 1 at pp. 28–29; Dkt. 57 at p. 24; Dkt. 58 at p. 4). Although Daniels's pleadings do not state whether he ever made another payment on his mortgage, they do indicate that, in October of 2021, Pennymac reported to Equifax, another credit reporting agency, that Daniels's loan account had been delinquent since December of 2018. (Dkt. 58 at pp. 2–3).

In December of 2021, Pennymac reported to Experian that Daniels's loan account was "flagged" by Pennymac with the designation "bank adjustment/deed in lieu/bank liquidation[.]" (Dkt. 58 at p. 3). Pennymac also began foreclosure proceedings in December

---

[4] Daniels's ex-wife relinquished her interest in the subject property after she and Daniels divorced, and she is not a party to this action. (Dkt. 58 at p. 2).

of 2021. (Dkt. 58 at p. 3). Daniels contacted Pennymac by phone and "demanded a copy of the original mortgage note and indebtedness instruments and the date the instrument transactions happened." (Dkt. 58 at p. 3). Pennymac said that it would send the documents and "directed [Daniels] to reach out to" MLG, which "was handling [the] foreclosure process and sale and auction" of Daniels's home. (Dkt. 58 at p. 3).

On December 14, 2021, Daniels received documents from Pennymac in response to his prior request. (Dkt. 58 at p. 4). The package from Pennymac included a copy of the deed of trust that Daniels and his ex-wife signed when they got their loan from SWBC; Daniels contends that the document was "counterfeit." (Dkt. 1 at pp. 30–31). The package from Pennymac also included a copy of a letter dated November 30, 2018 and addressed to Daniels in which Pennymac stated that SWBC had transferred servicing responsibility for Daniels's loan to Pennymac; Daniels claims that this notice was "backdated" and that he did not receive it before December of 2021. (Dkt. 1 at pp. 28–29; Dkt. 57 at p. 24; Dkt. 58 at p. 4).

On December 16, 2021, Daniels received a monthly billing statement from Pennymac. (Dkt. 58 at p. 4). The December 16, 2021 statement indicated that Daniels needed to pay $82,238.41 by January 18, 2022 to bring his account current; the total payoff amount at that time was $281,940.83. (Dkt. 1 at p. 32).

The foreclosure sale was scheduled for January 4, 2022. (Dkt. 58 at p. 3). On January 3, 2022, Daniels sent Pennymac a "presentment document" purporting to tender payment "in the amount of $274,906.00." (Dkt. 57-1 at pp. 59–61). $274,906.00 was a payoff amount that Pennymac had previously reported to Experian. (Dkt. 58 at p. 4). Included

with Daniels's "presentment document" was a United States Postal Service money order in the amount of $1.00 on which Daniels had handwritten "Accept for value tendered of $274,906.00":



Dkt. 57-1 at p. 61.

On January 3, 2022, Daniels also sent an email and a letter to MLG claiming that he had paid his balance "in full"—an apparent reference to the $1.00 money order—and that he would "pursue criminal prosecution" against MLG if it moved forward with the foreclosure sale. (Dkt. 57-1 at pp. 23–25). Daniels received no response from MLG. (Dkt. 57-1 at p. 26). On January 4, 2022, Daniels emailed MLG again and said that he would notify "the FBI" if MLG did not "stop the auction and foreclosure proceedings by 10am Central Time[.]" (Dkt. 57-1 at p. 26). MLG did not respond, and Pennymac sent the $1.00 money order back to Daniels with a notice stating that the money order did not constitute sufficient payment to make his account current. (Dkt. 57-1 at p. 63; Dkt. 58 at pp. 4–5).

ZLOS and Sorour bought Daniels's house at the foreclosure sale on January 4, 2022. (Dkt. 58 at p. 4).

—*The HOA lawsuit*

In addition to fighting the foreclosure, Daniels became involved in litigation stemming from HOA assessments that Daniels claims he did not owe. (Dkt. 57 at pp. 32–34). Cypresswood Lake sued Daniels in Texas state court to recover HOA assessments in February of 2020. (Dkt. 57-2 at pp. 51–52). Prior to the filing of the lawsuit, Defendant Roberts Markel Weinberg Butler Hailey, P.C. ("RMWBH"), which represented Cypresswood Lake, sent Daniels a demand letter claiming that Daniels owed Cypresswood Lake $3,254.24 in assessments and assorted administrative costs. (Dkt. 57-2 at pp. 48–50).

—*This lawsuit*

In this lawsuit, Daniels has sued 13 defendants and listed numerous theories of liability, including fraud, negligence, slander of title, violations of the federal Fair Debt Collection Practices Act ("FDCPA"), and violations of a host of other federal statutes and regulations, most of which are briefly mentioned without explanation. (Dkt. 1 at pp. 13–22; Dkt. 57 at pp. 12–34). After several defendants pointed out that his original complaint was deficient and moved for a more definite statement, Daniels filed a more definite statement and another pleading entitled "Notice to the Court of Timeline." (Dkt. 1; Dkt. 57; Dkt. 58). Daniels makes clear that his subsequent filings are supplemental pleadings that "do[] not eliminate the original filing[.]" (Dkt. 57 at p. 2).

Daniels's claims are often difficult to follow; his original complaint discusses all of the defendants collectively and never distinguishes among them or refers to them by name,

even when he is describing an action clearly taken by only one defendant. (Dkt. 1). For instance, when describing the monthly billing statement sent to him by Pennymac on December 16, 2021, Daniels's original complaint does not use Pennymac's name and instead attributes the payment demand to all of the defendants by alleging that it is "relevant to all claims" in the case:

<u>**GENERAL ALLEGATIONS RELEVANT TO ALL CLAIMS**</u>

13.         Plaintiff repeats and incorporates the preceding paragraphs above with the same force and effect as if set forth at length herein.

14.          On a Statement Dated December 16th 2021 Defendant sent to Plaintiff a demand for payment of an alleged debt obligation. Said document contained the following heading: Mortgage Activity Statement, Accelerated Amount and Foreclosure.

15.         Said document demanded payment of United States dollars in the amount of $82.238.41.

Dkt. 1 at p. 6.

Nevertheless, some salient issues are discernible. Daniels is challenging Pennymac's standing to foreclose on his home and is contending that SWBC and Pennymac did not comply with certain notice and disclosure requirements. (Dkt. 57 at pp. 12–26). Daniels is also claiming that he was not delinquent in his HOA assessment payments. (Dkt. 57 at p. 32).

**LEGAL STANDARD**

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
>
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).  Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Payton v. United States*, 550 Fed. App'x 194, 195 (5th Cir. 2013) (affirming dismissal of *pro se* complaint that "failed to plead with any particularity the facts that gave rise to [the plaintiff's] present cause of action") ("[T]he liberal *pro se* pleading standard still demands compliance with procedural standards.").

Additionally, allegations of fraud must be pled with particularity under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 9(b) "supplements" Rule 8 and requires a plaintiff who is pleading fraud to allege "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) (quotation marks and brackets omitted). Rule 9 allows conditions of the mind, such as scienter, malice, intent, or knowledge, to be averred generally; but "case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). "To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Id*. Rule 9(b)'s "ultimate meaning is context-specific[,]" but at bottom it is intended to "provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent plaintiffs from filing baseless

claims and then attempting to discover unknown wrongs." *IAS Services Group*, 900 F.3d at 647 (quotation marks and brackets omitted). "State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010).

When considering a motion to dismiss, a district court generally may not go outside the pleadings. *Id.* at 546. The court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

## ANALYSIS

The Court now turns to the pending motions to dismiss.[5]

---

[5] Daniels has filed a motion asking the Court to take judicial notice of a "Chain of Title Analysis & Mortgage Fraud Investigation" report by a private investigator whom Daniels attempts to tender as an expert witness. SWBC, joined by several other defendants, has filed a motion to strike the materials of which Daniels wants the Court to take judicial notice. As previously noted, matters subject to judicial notice may be considered by a district court when that court is evaluating a motion to dismiss under Rule 12(b)(6). *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). The materials presented by Daniels, however, fail to present facts that are either (1) generally known within the territorial jurisdiction of this Court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201. Accordingly, Daniels's motion for judicial notice (Dkt. 79) is **DENIED**. *See Scanlan v. Texas A&M University*, 343 F.3d 533, 537 (5th Cir. 2003) (noting that the report of a special investigative commission was not judicially noticeable) ("The Final Report cannot be characterized as generally known within the Southern District of Texas or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Instead, the Final Report is essentially a defendant-created report[.]"). SWBC's motion to strike the materials of which Daniels wants the Court to take judicial notice (Dkt. 84) is **GRANTED** to the extent that the Court will not consider those materials when deciding Defendants' motions to dismiss. At this time, the Court expresses no opinion on the ultimate admissibility of the private investigator's report or testimony.

*—Ginnie Mae and Citibank*

Ginnie Mae and Citibank played no role in either the foreclosure on Daniels's house or the dispute over Daniels's HOA assessments; Daniels is evidently suing them simply because they allegedly participated in the securitization of his mortgage. (Dkt. 1 at pp. 8–9, 16–17; Dkt. 57 at pp. 8–11, 31). In discussing securitization, Daniels propounds the theory that the securitization and pooling of his mortgage invalidated any subsequent assignment to Pennymac, stripping Pennymac of standing to foreclose. (Dkt. 1 at pp. 8–9, 16–17; Dkt. 57 at pp. 8–11, 31). According to Daniels, "the mortgage loan was no longer considered an enforceable loan instrument once the mortgage was split from the promissory note, paid, securitized and pooled to many different undisclosed stocks and bond investors[.]" (Dkt. 57 at p. 8).

The theory that improper securitization of a mortgage renders a subsequent assignment of that mortgage invalid "has been resoundingly rejected by federal courts across the country." *Berry v. Wells Fargo Bank, N.A.*, No. 20-30670, 2022 WL 728969, at *5 (5th Cir. Mar. 10, 2022) (quotation marks omitted); *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D. Tex. 2013) ("Plaintiffs cite no Texas authority, and the court has found none, to support their contention that the mere securitization of a note by transferring it into a trust extinguishes the foreclosure rights of the assignee of the deed of trust."). Moreover, Daniels's assertion that the securitization of his mortgage "split" the mortgage from the promissory note bespeaks reliance on "the flawed 'split-the-note' theory[,]" which incorrectly "assumes that, under Texas law, the entity foreclosing must own or hold both the note and the deed of trust." *Preston*, 931 F. Supp. 2d at 759; *see also*

*Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) ("A deed of trust gives the lender as well as the beneficiary the right to invoke the power of sale, even though it would not be possible for both to hold the note. The 'split-the-note' theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself.") (quotation marks and citation omitted).

Daniels's sparse allegations against Ginnie Mae and Citibank do not provide any basis for concluding that Pennymac's foreclosure was improper. More importantly, those allegations do not provide any basis on which Daniels could recover against either Ginnie Mae or Citibank. Accordingly, the motions to dismiss filed by Ginnie Mae[6] and Citibank will be granted.

—*King and MLG*

MLG was Pennymac's foreclosure counsel, and King is an attorney at the firm. (Dkt. 1 at p. 5). Daniels does not allege that either MLG or King ever contacted him. Although Daniels wrote a letter and two emails to MLG, he does not allege that either MLG or King ever responded. Daniels does not allege any misrepresentations or other conduct that could form the basis of a claim against King or MLG for fraud, for violations of the FDCPA, or under any other theory. Rather, Daniels's sole factual allegation against MLG

---

[6] Ginnie Mae's pending motion to set a responsive pleading deadline (Dkt. 76) is **DENIED AS MOOT**. The Court set a deadline (which Ginnie Mae met) for Ginnie Mae to file its motion to dismiss in a separate order. (Dkt. 82).

and King is that they represented Pennymac in what Daniels claims was a fraudulent foreclosure. (Dkt. 57 at p. 27).

The allegation that MLG and King represented Pennymac in what Daniels claims was a fraudulent foreclosure does not, on its own, state a claim upon which relief can be granted. Under Texas law, attorney immunity generally protects attorneys from liability to non-clients where the alleged conduct was within the scope of legal representation. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019). Attorney immunity is "broad[;]" it "can apply even to criminal acts so long as the attorney was acting within the scope of representation." *Id*. at 506–07.

The applicability of attorney immunity is a legal question that may be decided on a motion to dismiss when the scope of the attorney's representation is apparent on the face of the complaint. *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F3d 759, 764 (5th Cir. 2019). "Whether immunity attaches turns on the type of conduct in which the lawyer is engaged, and the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *6 (E.D. Tex. Dec. 10, 2012) (quotation marks and citation omitted); *see also Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) ("[A]n attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer[. T]he above inquiry correctly focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct. That is, a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful.")

(emphasis in *Youngkin*) (citation omitted). Texas courts have applied attorney immunity to attorneys sued for assisting a mortgage beneficiary in a nonjudicial foreclosure on real property and attorneys sued for sending debt acceleration and foreclosure notices. *See Troice*, 921 F.3d at 505–06 (citing *Campbell v. Mortgage Electronic Registration Systems*, No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied) and *Alanis v. Wells Fargo Bank National Association*, No 04-17-00069-CV, 2018 WL 1610939, at *1, 5 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied)).

Here, the only factual allegation that Daniels makes regarding MLG and King is that they represented Pennymac in a foreclosure proceeding. Daniels had no contact with either MLG or King. Although Daniels vaguely alleges that MLG and King "joined" in Pennymac's alleged fraud, he does not set forth any actions that MLG and King themselves took beyond carrying out a foreclosure sale for Pennymac. "Representing a mortgage company and filing a foreclosure action against homeowners who have defaulted on their loan is clearly the kind of conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Smith v. National City Mortgage*, No. A-09-881, 2010 WL 3338537, at *4 (W.D. Tex. Aug. 23, 2010), *adopted*, 2010 WL 11652114 (W.D. Tex. Sept. 20, 2010); *see also Campbell*, 2012 WL 1839357 at *6 (affirming dismissal of law firm that assisted a mortgage beneficiary in a nonjudicial foreclosure on real property) ("Neither the Campbells' petition nor their response to the motion to dismiss alleged that the Attorney Defendants committed any wrongful acts outside of the foreclosure proceedings."). Daniels's characterization of MLG's and King's conduct as fraudulent does not by itself state a claim against MLG and King. *Youngkin*, 546 S.W.3d

at 682 ("That the plaintiff characterized the firm's conduct as fraudulent or otherwise wrongful was immaterial to our evaluation of the immunity defense. Rather, the firm was shielded by attorney immunity because preparing documents ancillary to the divorce decree, even in a manner that allegedly violated the decree, was within the scope of representation relating to execution of the decree and was not foreign to the duties of a lawyer."); *see also McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997) (holding that the plaintiff, who sued the law firm that had represented the opposing party in a previous lawsuit, could not recover against the law firm for the law firm's allegedly false statements in an affidavit and motion for new trial filed in the previous suit). Accordingly, the motion to dismiss filed by MLG and King will be granted.

—*Cypresswood Lake and Abernathy*

Cypresswood Lake, of which Abernathy is the registered agent and manager, sued Daniels in Texas state court to recover HOA assessments in February of 2020. (Dkt. 57 at 32–34; Dkt. 57-2 at pp. 51–52). Daniels contends that Cypresswood Lake and Abernathy violated the FDCPA because he did not owe them HOA assessments. (Dkt. 57 at pp. 32–34).

Under the facts pled by Daniels, the FDCPA does not apply to Cypresswood Lake and Abernathy. The FDCPA only imposes civil liability on parties who meet the statutory definition of "debt collector." *KPMG Peat Marwick v. Texas Commerce Bank*, 976 F. Supp. 623, 632 (S.D. Tex. 1997). The FDCPA's definition of "debt collector" excludes: (1) a creditor who is collecting its own debts in its own name; and (2) officers or employees of a creditor who are collecting the creditor's debts in the creditor's name. *Id*. ("Any claim

regarding TCB's conduct on its own behalf is precluded by the statutory definition of "debt collector," which *excludes* "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor[.]") (emphasis in *Texas Commerce Bank*); *see also Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1201 (N.D. Ala. 2013) ("[T]he FDCPA does not apply to creditors who seek to collect only what is owed them. It only applies to third party debt collectors."). Neither Cypresswood Lake nor Abernathy is a debt collector. Daniels has not stated a claim against either of them. Accordingly, the motion to dismiss filed by Cypresswood Lake and Abernathy will be granted.

*—The remaining foreclosure defendants*

The dismissal of Ginnie Mae, Citibank, MLG, and King leaves the following named defendants who were involved in the foreclosure on Daniels's home: SWBC, Pennymac, ZLOS, and Sorour. Daniels is challenging Pennymac's standing to foreclose on his home and is contending that SWBC and Pennymac did not comply with certain notice and disclosure requirements.

All four remaining foreclosure defendants make strong arguments for dismissal on the pleadings. However, the relationships and communications among the parties, along with the chain of transactions involving Daniels's loan, are more appropriately addressed through summary judgment evidence. Accordingly, the motions to dismiss filed by SWBC, Pennymac, ZLOS, and Sorour will be denied without prejudice to being reasserted as motions for summary judgment.

*—The remaining HOA-assessment defendants*

The dismissal of Cypresswood Lake and Abernathy leaves the following named defendants who were involved in Daniels's HOA-assessment dispute: RMWBH, Noelle Hicks ("Hicks"), and Cliff Davis ("Davis"). Hicks and Davis were the RMWBH attorneys who represented Cypresswood Lake in its collection efforts against Daniels. RMWBH sent Daniels a demand letter, signed by Hicks, stating that Daniels owed Cypresswood Lake $3,254.24 in assessments and assorted administrative costs. Daniels denies that he owed Cypresswood Lake any assessments and contends that RMWBH, Hicks, and Davis violated the FDCPA by, among other things, misrepresenting the "character, amount, or legal status" of a debt. *See* 15 U.S.C. § 1692e(2).

Construing his pleadings liberally, Daniels has alleged facts sufficient to state a claim under the FDCPA, and it is unclear at this time whether attorney immunity bars Daniels's claims against RMWBH, Hicks, and Davis. "An attorney acting on behalf of a client is typically not a third party debt collector. But if the attorney employs nonattorneys who are regularly engaged to solicit debts for collection or who regularly make contact with debtors for the purpose of collection, the attorney becomes a third party debt collector." *Westervelt v. Ocwen Loan Servicing, LLC*, No. 4:08-CV-413, 2009 WL 2567852, at *2 (E.D. Tex. Aug. 17, 2009). Moreover, "[a]s long as the attorney *regularly* collects or attempts to collect debt on the behalf of another, he is a debt collector subject to the provisions of the FDCPA." *Id*. (emphasis in *Westervelt*); *see also Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006) ("[L]itigating lawyers are not exempt from the FDCPA if they otherwise qualify as debt collectors.").

Daniels's claims under the FDCPA against RMWBH, Hicks, and Davis are more appropriately addressed through summary judgment evidence. Accordingly, the motion to dismiss filed by RMWBH, Hicks, and Davis will be denied without prejudice to being reasserted as a motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Court rules on the numerous pending motions in this case as follows:

(1) The motions to dismiss filed by Defendants Government National Mortgage Association; Citibank, N.A.; Matthew King; Marinosci Law Group, P.C.; Cypresswood Lake Community Association, Inc.; and Shannon Abernathy (Dkt. 66; Dkt. 68; Dkt. 75; Dkt. 92) are **GRANTED**.

(2) The motions to dismiss filed by Defendants SWBC Mortgage Corporation; Pennymac Loan Services, LLC; ZLOS Investment Trust; Sam Sorour; Roberts Markel Weinberg Butler Hailey, P.C.; Noelle Hicks; and Cliff Davis (Dkt. 62; Dkt. 63; Dkt. 64; Dkt. 67; Dkt. 69) are **DENIED without prejudice** to being reasserted as motions for summary judgment.

(3) The first motion to dismiss filed by Defendants Matthew King and Marinosci Law Group, P.C. (Dkt. 29) is **DENIED AS MOOT**.

(4) The pending motions for a more definite statement (Dkt. 35; Dkt. 36; Dkt. 37; Dkt. 41) are **DENIED AS MOOT**.

(5) Defendant Government National Mortgage Association's motion to set a responsive pleading deadline (Dkt. 76) is **DENIED AS MOOT**.

(6) Plaintiff David Lee Daniels, III's motion for judicial notice (Dkt. 79) is **DENIED**.

(7) Defendant SWBC Mortgage Corporation's motion to strike the materials of which Plaintiff David Lee Daniels, III wants the Court to take judicial notice (Dkt. 84) is **GRANTED** to the extent that the Court has not considered those materials when deciding Defendants' motions to dismiss.

18 / 19

(8) Docket entry 73, to the extent that Plaintiff David Lee Daniels, III intended it to be a motion to strike the defendants' motions to dismiss, is **DENIED**.

SIGNED at Houston, Texas, on October 31, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE