United States District Court
Southern District of Texas
**ENTERED**
June 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| DAVID LEE DANIELS, III | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-199 |
| | § | |
| PENNYMAC LOAN SERVICES, LLC, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a wrongful foreclosure case in which Plaintiff David Lee Daniels, III ("Daniels"), proceeding *pro se* and *in forma pauperis*, originally sued 13 defendants. The Court dismissed six of the defendants under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 95). The remaining seven defendants have now filed a total of five motions for summary judgment, to which Daniels has responded. The Court has considered the briefing, the record, and the applicable law. All of the pending motions for summary judgment (Dkt. 101; Dkt. 102; Dkt. 103; Dkt. 113; Dkt. 114) are **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court discussed in its opinion granting six defendants' motions to dismiss under Rule 12(b)(6), this lawsuit involves two distinct matters: (1) a nonjudicial foreclosure proceeding initiated against Daniels's home by Defendant Pennymac Loan Services, LLC ("Pennymac"); and (2) a judicial foreclosure action brought against Daniels in Texas state court by Cypresswood Lake Community Association, Inc. ("Cypresswood Lake") on the basis of unpaid homeowner association ("HOA") dues. However, no party has requested

severance under Federal Rule of Civil Procedure 21, and the Court has kept the claims together under this cause number in the interest of judicial economy. The following facts are established by uncontroverted evidence in the summary judgment record.

—*The Pennymac foreclosure*

In August of 2016, Daniels took out a mortgage loan[1] with Defendant SWBC Mortgage Corporation ("SWBC"). (Dkt. 114-2; Dkt. 114-7). Daniels executed a note and a deed of trust; the deed of trust stated that Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as SWBC's nominee, was the beneficiary of the deed of trust. (Dkt. 114-7 at p. 2). The loan was secured by Daniels's home, which was located at 19922 Cypresswood Square in Spring, Texas. (Dkt. 114-7 at pp. 2–3).

In 2018, Pennymac bought Daniels's loan. (Dkt. 114-6). Pennymac began servicing Daniels's loan in November of 2018; and MERS recorded an assignment of the deed of trust to Pennymac in the real property records of Harris County, Texas in April of 2019. (Dkt. 114-6 at p. 3; Dkt. 114-8). Pennymac sent two letters to Daniels in November of 2018 informing Daniels of the sale of the loan and notifying him that he should begin making loan payments to Pennymac. (Dkt. 113-1 at pp. 24–31, 33–34).

Shortly after Pennymac took over servicing responsibility for Daniels's loan, Daniels fell behind on his payments; and Pennymac sent him a notice of default and intent to accelerate in December of 2018 and another such notice in January of 2019. (Dkt. 113-1 at pp. 78, 106). In response to the default notices, Daniels made a partial payment to

---

[1] Daniels's ex-wife took out the loan with him; but she relinquished her interest in the subject property after she and Daniels divorced, and she is not a party to this action. (Dkt. 101-12).

Pennymac and began, but did not complete, two applications for a loan modification program. (Dkt. 113-1 at pp. 100, 118, 132). In May of 2019, Pennymac sent Daniels a notice of acceleration and nonjudicial foreclosure sale. (Dkt. 113-1 at pp. 137–140).

After receiving the foreclosure notice, Daniels submitted a complete application for a loan modification program. (Dkt. 113-1 at pp. 147–57). In a written statement attached to the loan modification application and addressed to "Pennymac Modification Assistance," Daniels explained that he had been laid off in July of 2018 and again in March of 2019 but had gotten another job in April of 2019. (Dkt. 113-1 at p. 157). Daniels made another partial payment to Pennymac in July of 2019, and Pennymac informed him later that month that his loan modification application had qualified him for a loan modification trial payment plan. (Dkt. 113-1 at pp. 164, 167).

In order to successfully complete the loan modification trial payment plan, Daniels was required to make three monthly payments. (Dkt. 113-1 at p. 168). Successful completion of the trial payment plan would qualify Daniels for a permanent loan modification plan. (Dkt. 113-1 at pp. 167–68). Daniels sent Pennymac a check for his first payment, but Pennymac sent a letter to Daniels notifying him that the check bounced. (Dkt. 113-1 at p. 176). After Daniels failed to tender his first payment by the due date, Pennymac informed Daniels by letter that he did not qualify for a permanent loan modification plan because he had not made his trial plan payments as required. (Dkt. 113-1 at p. 179).

Pennymac then sent Daniels another notice of acceleration and nonjudicial foreclosure sale in November of 2021. (Dkt. 113-1 at pp. 184–88). The foreclosure sale was scheduled for January 4, 2022. (Dkt. 113-1 at pp. 184–88). On January 3, 2022, Daniels

sent Pennymac a United States Postal Service money order in the amount of $1.00 on which

Daniels had handwritten "Accept for value tendered of $274,906.00":



Dkt. 113-1 at pp. 196–200.

Daniels apparently believed, or somehow hoped that Pennymac would believe, that

the money order would pay off his loan and stave off foreclosure. In a letter that

accompanied the money order, Daniels wrote, "This document instructs PENNYMAC

LOAN SERVICES as the HOLDER IN DUE COURSE to accept and enforce this

POSTAL MONEY ORDER as a negotiable instrument for value of $274,906.00[.]" (Dkt.

113-1 at p. 199). Daniels further wrote in the letter that his loan was now "paid in full

showing a final balance of '0' (zero)" and that "[t]he auction set to take place on the real

property of 19922 Cypresswood Square, Spring, TX 77373 on 01/04/2022" could "not take

place or proceed" without his consent. (Dkt. 113-1 at p. 199).

Pennymac returned the $1.00 payment and moved forward with the foreclosure sale.

(Dkt. 113-1 at pp. 202, 207). Defendant ZLOS Investment Trust ("ZLOS") bought

Daniels's house at the foreclosure sale. (Dkt. 113-1 at p. 207). Defendant Sam Sorour ("Sorour") is a trustee for ZLOS. (Dkt. 103-1 at p. 1).

Daniels refused to vacate the property, and ZLOS filed a forcible detainer action against him in Texas state court. (Dkt. 103-8; Dkt. 103-9). ZLOS prevailed in its forcible detainer suit; and the Texas state court awarded possession of the home, along with $10,000.00 for rent and $2,500.00 for attorney's fees, to ZLOS. (Dkt. 103-9).

*—The HOA lawsuit*

In addition to missing mortgage payments, Daniels fell behind on his HOA dues beginning in 2019. (Dkt. 101-5). Cypresswood Lake sent Daniels a letter in March of 2019 notifying him that his HOA account was in arrears; that "the account w[ould] continue to accrue interest and administrative cost[s] monthly[;]" and that Cypresswood Lake would commence collection proceedings if Daniels did not either bring his account current or make a minimum payment within 30 days. (Dkt. 101-4 at pp. 3–4). The letter included an itemized account statement. (Dkt. 101-4 at p. 5). There is no response from Daniels in the record.

Cypresswood Lake retained Defendant Roberts Markel Weinberg Butler Hailey, P.C. ("RMWBH") to continue its collection efforts. (Dkt. 101-6 at p. 1). In October of 2019, RMWBH sent Daniels a demand letter stating that Daniels owed Cypresswood Lake $2,086.90 in delinquent dues and assorted administrative costs. (Dkt. 101-6). The letter notified Daniels that "further legal action w[ould] be taken" if he did not either pay the debt or "make other payment arrangements acceptable to [Cypresswood Lake]" within 30 days. (Dkt. 101-6 at pp. 1–2). The letter also stated that Daniels could dispute the debt

within 30 days, in which case RMWBH would mail verification of the debt to Daniels. (Dkt. 101-6 at p. 1). There is no response from Daniels in the record.

On February 27, 2020, Cypresswood Lake, represented by RMWBH, filed a judicial foreclosure action against Daniels in Texas state court. (Dkt. 101-7). Cypresswood Lake's state-court pleading itemized the dues payments, administrative fees, interest, and attorney's fees that Daniels owed. (Dkt. 101-7 at p. 7). Cypresswood Lake moved for summary judgment. *See* case number 2020-13172 in the 133rd Judicial District Court of Harris County, Texas. In opposing Cypresswood Lake's summary judgment motion, Daniels filed two lengthy briefs containing incoherent passages like these:

> Notice, it is Fact, affiant is aware and has personal knowledge of mistaken identity against DAVID LEE DANIELS III.

> Notice, it is a Fact, affiant is aware that the Court lacks all jurisdiction over the subject matter and territorial jurisdiction.

> Notice, it is a Fact, affiant is aware that the Court can only legislate to exercise like Authority over all **Places** purchased by the Consent of the Legislature of the **State** in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings. It is Fact that the affiant and property does not fall under this authority nor territory.

> Notice it is Fact, the affiant has reason to believe and do so believe that "$"  has no legal/lawful definition. Notice it is Fact, affiant is aware that someone without recourse against another party cannot sue that party and cannot get adequate relief. See Exhibit -C (Amounts Secured By The Association's Lien & TOTAL AMOUNT DUE "3,439.92") See Exhibit -D (TOTAL AMOUNT DUE "$5,345.70")

On the date of October 25th, 2021,  David Lee Daniels III, agent for principal DAVID LEE DANIELS III came before me today present as the affiant, Consumer in Fact being (Non entity/non debtor) under oath to the most high of creation only and provided the facts listed herein David Lee Daniels III Sworn to or Affirmed by and subscribed before me on the 25th day of, October year 2021.

Dkt. 101-2 at pp. 1, 2, 5, 7; Dkt. 101-3.

Before the Texas state court ruled on Cypresswood Lake's motion for summary judgment, Pennymac conducted its foreclosure sale. Considering its lien extinguished by the foreclosure sale, Cypresswood Lake voluntarily dismissed its judicial foreclosure action against Daniels. (Dkt. 101-13).

—*Daniels's responses to Defendants' motions for summary judgment*

As the Court noted in a previous opinion in this case, Daniels's pleadings are often difficult to follow. Similarly, Daniels's responses to Defendants' motions for summary judgment provide little clarity as to what exactly Daniels's claims are; and even when those responses are comprehensible, they are unsupported by citations to evidence in the record. The Court can see that, as to the Pennymac foreclosure, a central pillar of Daniels's claims is his argument that Pennymac lacked the power to foreclose because the assignment of the deed of trust by MERS to Pennymac was invalid. (Dkt. 116 at p. 4). In Daniels's estimation, the assignment's supposed invalidity nullifies ZLOS's purchase of Daniels's home at the foreclosure sale. (Dkt. 116 at p. 4).

SWBC did not foreclose on Daniels's home, but Daniels contends that SWBC "fraudulently issued [him] a Farm Ownership Loan under the Consolidated Farm and Rural Development Act" and also "violated the Truth in Lending Act" by depriving him of a

statutory right to rescission and failing to give him notice of the assignment of the deed of trust to Pennymac. (Dkt. 117 at p. 2). Daniels further contends that SWBC was obligated to inform him of the securitization of his loan. (Dkt. 117 at p. 4).

With regard to the lawsuit over his HOA dues, Daniels contends that RMWBH and two of its lawyers, Defendants Noelle Hicks ("Hicks") and Cliff Davis ("Davis") (collectively "the HOA defendants"), violated the federal Fair Debt Collection Practices Act ("FDCPA") "by attempting to obtain assessment fees for the HOA without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction." (Dkt. 104 at p. 4). Daniels also argues that the HOA defendants' demand letter violated the FDCPA because it was "unfair" and "not truthful[.]" (Dkt. 104 at p. 5).

Daniels also contends that the Court must deny four of Defendants' motions because "the parties have not engaged in meaningful discovery[.]" (Dkt. 104 at p. 6; Dkt. 105 at p. 6; Dkt. 116 at p. 5). Daniels does not make this argument in his response to SWBC's motion. (Dkt. 117).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id*. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (quotation marks and footnote omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-

movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). And Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Daniels is proceeding pro se, "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise pro se parties of their burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## ANALYSIS

The Court now turns to Daniels's responses to Defendants' motions for summary judgment.

*—SWBC*

SWBC was Daniels's original lender. The summary judgment record reflects that SWBC did not play any role in either the foreclosure on Daniels's house or the dispute over Daniels's HOA assessments. Daniels acknowledges these facts but contends that "the Real Estate Loan process is void ab initio" because SWBC "fraudulently issued [him] a Farm Ownership Loan under the Consolidated Farm and Rural Development Act" and also "violated the Truth in Lending Act" by depriving him of a statutory right to rescission and failing to give him notice of the assignment of the deed of trust to Pennymac. (Dkt. 117 at p. 2). Daniels further contends that SWBC was obligated to inform him of the securitization of his loan. (Dkt. 117 at p. 4). These arguments do not create a triable fact issue regarding Daniels's obligation to make his mortgage payments.

i.    <u>The nature of Daniels's loan</u>

First, there is no evidence in the record showing that Daniels's loan was a farm ownership loan, and there is evidence to the contrary. The summary judgment record contains a schedule of pooled mortgages that includes Daniels's loan. (Dkt. 114-4 at p. 2). Some of those mortgages are indeed "Rural Development" mortgages—they carry the designation "RD" on the schedule—but Daniels's loan is listed as a Federal Housing Administration mortgage, not a rural development mortgage. (Dkt. 114-4 at p. 2).[2] Daniels does not point to any summary judgment evidence controverting the schedule.

---

[2] The schedule of pooled mortgages in the summary judgment record lists some of the mortgages, including Daniels's, that comprise Government National Mortgage Association ("Ginnie Mae")

In any event, Daniels does not explain how the nature of his loan has anything to do with his responsibility to make mortgage payments as required by the agreements that he executed. Daniels's argument regarding the nature of his loan does not create a genuine issue of material fact.

### ii.   The Truth in Lending Act

Daniels next contends that SWBC "violated the Truth in Lending Act" by depriving him of a statutory right to rescission and failing to give him notice of the assignment of the deed of trust to Pennymac. (Dkt. 117 at p. 2).

The rescissory rights that Daniels attempts to invoke are set forth in 15 U.S.C. § 1635(a) and 12 C.F.R. § 1026.23. The statute and regulation provide for a three-day period in which an obligor may rescind certain consumer credit transactions, and they require creditors to "clearly and conspicuously disclose" that right to rescind to the obligor. *See* 15 U.S.C. § 1635(a); *see also* 12 C.F.R. § 1026.23. However, these provisions do not apply to residential mortgage transactions. *See* 15 U.S.C. § 1635(e)(1); *see also* 12 C.F.R. § 1026.23(f)(1). The statute and regulation define the term "residential mortgage transaction" as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

---

pool number AV1765MSF. (Dkt. 114-3; Dkt. 144-4). The Court takes judicial notice under Federal Rule of Evidence 201 of Ginnie Mae's website, which explains that the "FHA" designation on a schedule means that a mortgage originated through the Federal Housing Administration's insurance program, while the "RD" designation means that a loan originated through the United States Department of Agriculture's Rural Development insurance program. *See* https://www.ginniemae.gov/products_programs/programs/Pages/single_family_program.aspx.

15 U.S.C. § 1602(x); *see also* 12 C.F.R. § 1026.2(a)(24).

Daniels's transaction with SWBC falls squarely within the definition of "residential mortgage transaction" set out in 15 U.S.C. § 1602(x) and 12 C.F.R. § 1026.2(a)(24). Accordingly, the right-of-rescission provisions that Daniels attempts to invoke do not apply.

Similarly, SWBC was not required to give Daniels notice of the assignment of the deed of trust to Pennymac. The disclosure requirements that Daniels attempts to invoke are contained in 12 C.F.R. § 226.39(d) and 12 C.F.R. § 1026.39(d). However, in the context of the assignment of Daniels's loan, those disclosure requirements only applied to Pennymac—which, according to uncontroverted evidence in the summary judgment record, met those requirements by way of a letter sent in November of 2018—and did not apply to SWBC. (Dkt. 113-1 at pp. 33–34). The regulations specify that their disclosure requirements do not apply to transferors; rather, the disclosure requirements apply to a person who "becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer[.]" 12 C.F.R. § 226.39(a)(1); *see also* 12 C.F.R. § 1026.39(a)(1).

Pennymac, not SWBC, became the owner of Daniels's debt obligation when the deed of trust was assigned. Accordingly, while Pennymac was subject to the disclosure requirements that Daniels now invokes, SWBC was not.

### iii.   Notice of the securitization

Daniels also contends that SWBC was obligated to inform him of the securitization of his loan. (Dkt. 117 at p. 4). In its entirety, the argument reads:

> Defendants concealed the fact that the Loans were securitized, and by concealing the securitization, Defendant concealed the fact that the Borrower's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Defendant offers no evidence to counter this undisputed allegation.

Dkt. 117 at p. 4.

Daniels fails to explain, through citation to law or summary judgment evidence, why these facts, even if properly characterized as undisputed, are material. *See Robson*, 420 F.3d at 536 ("An issue is material if its resolution could affect the outcome of the action.") (quotation marks omitted). Daniels does not point to a statute, regulation, case, contractual provision, or piece of summary judgment evidence establishing that SWBC was required to tell him that his loan was being securitized. Essentially, this argument appears to be a retread of Daniels's statement in his pleadings that his "mortgage loan was no longer considered an enforceable loan instrument once the mortgage was split from the promissory note, paid, securitized and pooled to many different undisclosed stocks and bond investors[.]" (Dkt. 57 at p. 8). In an earlier opinion in this case, the Court rejected Daniels's contention that securitization of a mortgage renders a subsequent assignment of that mortgage invalid, noting that the argument "has been resoundingly rejected by federal courts across the country." *Berry v. Wells Fargo Bank, N.A.*, No. 20-30670, 2022 WL 728969, at *5 (5th Cir. Mar. 10, 2022) (quotation marks omitted); *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D. Tex. 2013) ("Plaintiffs cite no Texas authority, and the court has found none, to support their contention that the mere

securitization of a note by transferring it into a trust extinguishes the foreclosure rights of the assignee of the deed of trust."). The Court remains unconvinced that Daniels can base any viable claim on either the securitization of his mortgage or his allegation that the securitization was not disclosed to him.

Daniels has not pointed to any summary judgment evidence establishing that there is a triable fact issue on any possible claim against SWBC. The Court will grant SWBC's motion for summary judgment.

—*Pennymac*

Pennymac bought Daniels's loan from SWBC and, when Daniels failed to make his mortgage payments as required, conducted a nonjudicial foreclosure.

In responding to Pennymac's motion, Daniels contends that Pennymac lacked the power to foreclose because the assignment of the deed of trust by MERS to Pennymac was invalid. (Dkt. 116 at p. 4). Specifically, Daniels claims in his summary judgment response that "PennyMac forged a fake and false 'Assignment of Deed of Trust' with a robo signature of a fake and false employee of [MERS,]" rendering the assignment by MERS to Pennymac void. (Dkt. 116 at p. 4). Daniels's summary judgment response cites no evidence supporting this contention; but the "forgery" argument seems to be referring to an allegation contained in Daniels's pleadings that Gina Benn ("Benn"), who executed the assignment of the deed of trust on behalf of MERS, is an employee of Pennymac, not of MERS. (Dkt. 57 at pp. 28–29; Dkt. 113-1 at p. 36). The basis for Daniels's allegation is a purported screenshot of Benn's LinkedIn profile, which lists Benn's current position as senior vice president of Pennymac. (Dkt. 57-1 at p. 51).

Assuming that Benn works for Pennymac, the fact that she executed the assignment for MERS does not by itself invalidate the assignment. Summary judgment evidence reflects that Benn could be (or at least was at the time of the assignment) both an employee of Pennymac and a MERS signing officer, meaning that under the circumstances Benn could indeed, as an officer of MERS, execute an assignment to Pennymac, her employer. *See, e.g., Antony v. United Midwest Savings Bank*, No. 4:15-CV-1062, 2016 WL 914975, at *3 (S.D. Tex. Mar. 10, 2016), *aff'd*, 673 Fed. App'x 447 (5th Cir. 2017) ("Flagstar submitted evidence of its standing to foreclose under the Deed of Trust through a facially valid assignment from MERS signed by James Abbas, a Flagstar employee and a MERS signing officer. . . . There is no factual dispute material to determining whether MERS's assignment of the Deed of Trust to Flagstar was void. It was not, and Flagstar had standing to foreclose."); *Ocwen Loan Servicing LLC v. Kroening*, No. 10-C-4692, 2011 WL 5130357, at *5 (N.D. Ill. Oct. 28, 2011) ("The Assignment of Mortgage, entered into in December of 2009, was between MERS, acting as nominee for TBW, and Ocwen. . . . The assignment was executed for MERS by Scott Anderson. Anderson is an employee of Ocwen, but was designated by Corporate Resolution as an assistant secretary and vice president of MERS, and as such had the authority to assign any mortgage naming MERS as the mortgagee."). "[T]he mere allegation that [Benn] was not a MERS employee cannot by itself support a cause of action" because "MERS generally relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Howard v. JPMorgan Chase NA*, No. SA-12-CV-440, 2013 WL 1694659, at *8 (W.D. Tex. Apr. 18, 2013); *see also Cervantes v. Countrywide Home*

*Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011) ("[M]ost of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans.").

Moreover, even if Benn lacked the authority to sign for MERS, her "lack of authority . . . does not furnish [Daniels] with a basis to challenge the . . . assignment." *Reinagel v. Deutsche Bank National Trust Co.*, 735 F.3d 220, 226 (5th Cir. 2013). Under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal[.]" *Id.* Here, that "defrauded principal" would be MERS, or perhaps SWBC, for which MERS was acting as nominee. It would not be Daniels, who is the obligor. Since "Texas law is settled that the obligors of a claim may not defend against an assignee's effort to enforce the obligation on any ground which renders the assignment voidable only," Daniels cannot challenge the assignment of the deed of trust by merely pointing to Benn's alleged lack of authority to sign for MERS. *Id.* (brackets and ellipsis omitted).

Daniels has not pointed to any summary judgment evidence establishing that there is a triable fact issue on any possible claim against Pennymac. The Court will grant Pennymac's motion for summary judgment.

### —ZLOS and Sorour

ZLOS, for which Sorour is a trustee, bought Daniels's house at the foreclosure sale.

Daniels predicates his response to the motion for summary judgment filed by ZLOS and Sorour[3] almost entirely on his argument that the foreclosure sale at which ZLOS bought Daniels's home was invalid because the assignment of the deed of trust by MERS to Pennymac was invalid. (Dkt. 105 at p. 4). The Court has already rejected this argument in its discussion of Pennymac's motion for summary judgment.

The one additional contention that Daniels raises in his response to the ZLOS/Sorour motion is that he "was never notified of the pending auction of the property, despite Defendants' representations to the contrary." (Dkt. 105 at p. 4). In support, Daniels cites an affidavit sworn out by a woman named Priscilla Duenas ("Duenas"), who was living in Daniels's house at the time of the foreclosure sale and testifies in her affidavit that "Mr. Daniels was never served any documents that the property was being sold or auction [sic] off." (Dkt. 105 at pp. 9–10). Duenas further testifies in her affidavit that she told Sorour that Daniels was never served when Sorour came to Daniels's house after the foreclosure sale. (Dkt. 105 at pp. 9–10).

Duenas's affidavit does not create a genuine issue of material fact on Daniels's claims against ZLOS and Sorour. To begin with, Pennymac, not ZLOS, was obligated to serve notice of the foreclosure sale. Leaving that aside, Duenas's affidavit provides, at most, evidence that Daniels did not receive the notice of acceleration and nonjudicial foreclosure sale that Pennymac mailed to him in November of 2021; and Daniels's nonreceipt of that notice is not material because "[t]here is no requirement that [Daniels]

---

[3] ZLOS and Sorour filed one motion for summary judgment but, for some reason, filed it twice. (Dkt. 102; Dkt. 103).

receive the notice." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256–57 (5th Cir. 2013) (discussing Tex. Prop. Code § 51.002(e)); *see also LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) ("Texas courts have recognized that the dispositive inquiry is not *receipt* of notice, but, rather, *service* of notice.") (quotation marks omitted; emphasis in *LSR Consulting*); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The general purpose of [Section 51.002 of the Texas Property Code] is to provide a minimum level of protection for the debtor, and it provides for only constructive notice of the foreclosure.").

The deed of trust provides that "Lender shall mail a copy of the notice [of sale] to Borrower in the manner prescribed by Applicable Law." (Dkt. 114-7 at p. 8). The deed of trust further provides that it is "governed by federal law and the law of the jurisdiction in which the Property is located." (Dkt. 114-7 at p. 6). Under Section 51.002 of the Texas Property Code, service of a notice of a foreclosure sale that is conducted under a power of sale conferred by a deed of trust "is complete when the notice is sent via certified mail." *Martins*, 722 F.3d at 256; *see also* Tex. Prop. Code § 51.002(e). Pennymac has included in the summary judgment record a copy of the notice of acceleration and nonjudicial foreclosure sale that it mailed to Daniels in November of 2021, along with an affidavit testifying that the notice was sent by certified mail. (Dkt. 113-1 at pp. 184–89). Pennymac's evidence is sufficient to establish proper service. *Martins*, 722 F.3d at 256 ("BAC satisfied its burden of proof by presenting evidence of mailing the notice and an affidavit to that effect."). And the Fifth Circuit and Texas state courts have repeatedly "held there to be no genuine dispute as to the sending of notices required under Section 51.002 when the sole

contravening evidence is the homeowner's affidavit asserting non-receipt." *LSR Consulting*, 835 F.3d at 534–35; *see also Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 371–72 (5th Cir. 2021). On this record, there is no genuine issue of material fact regarding whether Pennymac provided notice of the foreclosure sale in accordance with the deed of trust and Texas law.

Daniels has not pointed to any summary judgment evidence establishing that there is a triable fact issue on any possible claim against ZLOS and Sorour. The Court will grant the motion for summary judgment filed by ZLOS and Sorour.

*—The HOA defendants*

The HOA defendants—RMWBH, Hicks, and Davis—represented Cypresswood Lake in its attempts to collect delinquent HOA dues from Daniels. The summary judgment record reflects that the HOA defendants sent a demand letter to Daniels on Cypresswood Lake's behalf and then represented Cypresswood Lake in a judicial foreclosure action against Daniels. In his response to the HOA defendants' motion for summary judgment, Daniels contends that the HOA defendants violated the FDCPA "by attempting to obtain assessment fees for the HOA without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction." (Dkt. 104 at p. 4). Daniels also argues that the HOA defendants' demand letter violated the FDCPA because it was "unfair" and "not truthful[.]" (Dkt. 104 at p. 5).

i.     The FDCPA's limitations on communication in connection with debt
collection

In opposing the HOA defendants' summary judgment motion, Daniels first argues that the HOA defendants violated the FDCPA "by attempting to obtain assessment fees for the HOA without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction[,]" and he cites to 15 U.S.C. § 1692c(a) for support. (Dkt. 104 at p. 4). However, 15 U.S.C. § 1692c(a) is not as expansive as Daniels represents it to be. In full, the statute reads:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or
>
> (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.
>
> 15 U.S.C. § 1692c(a).

Daniels has not presented any evidence showing that the HOA defendants contacted him at an unusual or inconvenient time or place, contacted him while he was represented

by an attorney, or contacted him at work. The record reflects that the HOA defendants sent Daniels a demand letter. (Dkt. 101-6). When Daniels failed to respond to the demand letter, the HOA defendants represented Cypresswood Lake in a judicial foreclosure action against Daniels. (Dkt. 101-7). The record contains no evidence showing that the HOA defendants contacted Daniels in any way that violated 15 U.S.C. § 1692c(a).

    ii.  The demand letter

   Daniels next argues that the HOA defendants' demand letter violated the FDCPA because it was "unfair" and "not truthful[.]" (Dkt. 104 at p. 5). Daniels does not point to any evidence in the record and does not specify any deficiencies in the demand letter.

   The Court does not find Daniels's argument persuasive. The HOA defendants' demand letter, which is included in the record in full, did not suffer from any evident deficiencies. The letter stated that Daniels owed unpaid HOA dues and other associated fees and costs to Cypresswood Lake; provided an amount; and informed Daniels that he could dispute the debt in writing within 30 days, which Daniels failed to do. (Dkt. 101-6). The letter further stated that the HOA defendants and Cypresswood Lake would take further legal action, incurring more fees and costs for which Daniels was responsible, if Daniels failed to either make full payment or make other payment arrangements acceptable to Cypresswood Lake within 30 days. (Dkt. 101-6 at p. 2). Evidence in the summary judgment record shows that Daniels paid his HOA dues as required until 2019, when he missed his annual dues payment; Daniels missed his 2020 payment as well. (Dkt. 101-5; Dkt. 101-8 at p. 2). The applicable deed restrictions gave Cypresswood Lake the power to impose dues; the power to collect interest, late fees, and attorney's fees related to

delinquent dues payments; and the power to foreclose on the homes of people who failed to pay their dues. (Dkt. 101-1 at pp. 29–37). Daniels does not specify any false representation made by the HOA defendants' demand letter, and he does not point to any evidence in the record showing that any representation made in the demand letter was false.

Daniels has not pointed to any summary judgment evidence establishing that there is a triable fact issue on any possible claim against the HOA defendants. The Court will grant the motion for summary judgment filed by the HOA defendants.

*—Federal Rule of Civil Procedure 56(d)*

Finally, Daniels contends that the Court must deny four of Defendants' motions because "the parties have not engaged in meaningful discovery[.]" (Dkt. 104 at p. 6; Dkt. 105 at p. 6; Dkt. 116 at p. 5). Daniels does not make this argument in his response to SWBC's motion. (Dkt. 117). The Court construes this argument as a motion under Federal Rule of Civil Procedure 56(d). The Court will deny Daniels's Rule 56(d) motion.

Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.
> Fed. R. Civ. P. 56(d).

To win relief, a Rule 56(d) movant must show: (1) that additional discovery will create a genuine issue of material fact; and (2) that he or she diligently pursued discovery. *Bailey v. KS Management Services, L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022). The Rule 56(d) movant "may not simply rely on vague assertions that discovery will produce needed,

but unspecified, facts." *Smith v. Regional Transit Authority*, 827 F.3d 412, 423 (5th Cir. 2016) (quotation marks omitted).

Daniels's Rule 56(d) motion relies entirely on his assertion that "the parties have not engaged in meaningful discovery, which would preclude the entry of summary judgment in Defendants' favor." (Dkt. 104 at p. 6; Dkt. 105 at p. 6; Dkt. 116 at p. 5). This is nothing more than a "vague assertion . . . that discovery will produce needed, but unspecified, facts[,]" and it is insufficient to establish entitlement to relief under Rule 56(d). *Id.* The Court will deny Daniels's Rule 56(d) motion.

## CONCLUSION

For the reasons stated above, the motions for summary judgment filed by Defendants SWBC Mortgage Corporation; Pennymac Loan Services, LLC; ZLOS Investment Trust; Sam Sorour; Roberts Markel Weinberg Butler Hailey, P.C.; Noelle Hicks; and Cliff Davis (Dkt. 101; Dkt. 102; Dkt. 103; Dkt. 113; Dkt. 114) are **GRANTED**.

The Court will enter a separate final judgment.

SIGNED at Houston, Texas, on June 7, 2023.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE